# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 2, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**BETTY TUDOR, WIDOW OF EDESSEL TUDOR,**
**Claimant Below, Petitioner**

**vs.)    No. 16-0829** (BOR Appeal No. 2051227)
                              (Claim No. 860070801)

**U.S. STEEL MINING COMPANY, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Betty Tudor, widow of Edessel Tudor, by Robert L. Stultz, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. U.S. Steel Company, Inc., by Howard G. Salisbury Jr., its attorney, filed a timely response.

The issue on appeal is whether the claimant is entitled to decedent's benefits. The claims administrator denied dependent's benefits on April 21, 2014. The Office of Judges affirmed the decision in its April 11, 2016, Order. The Order was affirmed by the Board of Review on August 8, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mrs. Tudor alleges that her husband, Edessel Tudor, died as a result of occupational pneumoconiosis contracted during his work as a coal miner. Mr. Tudor underwent pulmonary function studies on February 4, 1988, by M. Tampoya, M.D. Dr. Tampoya found a forced vital capacity (FVC) of 72%, a forced expiratory volume (FEV1) of 85% and the FEV1/FVC ratio was 116%. Dr. Tampoya diagnosed chronic obstructive pulmonary disease due to dust exposure and cigarette smoking. The pulmonary impairment was described as mild to moderate. A chest x-ray taken the following day showed chronic lung changes probably related to pneumoconiosis. The radiologist diagnosed minimal changes of pneumoconiosis. A chest x-ray taken on March 11, 1998, showed primary small opacities with a profusion of 1/0.

1

In a June 13, 1988, treatment note, Mario Cardona, M.D., noted complaints of shortness of breath, cough, and chest pain. Mr. Tudor reported shortness of breath for twelve to fourteen years that worsened with activity. He also reported reduced activities of daily living, episodes of dyspnea, and wheezing. A chest x-ray showed emphysematous configuration with coarse rales in all fields. Dr. Cardona diagnosed chronic obstructive pulmonary disease secondary to coal workers' occupational pneumoconiosis. Dr. Cardona opined that based on the evidence, the decedent's disease should be considered the result of occupational pneumoconiosis.

A pulmonary function study on June 13, 1988, indicated Mr. Tudor smoked a half a pack of cigarettes a day for twenty years. His pre-bronchodilator FVC was 55% and the FVC post-bronchodilator was 48%. FEV1 was 57% pre and 50% post-bronchodilator. Mr. Tudor was seen by George Zaldivar, M.D., on January 4, 1989, who found an FVC of 45%, and FEV1 of 42%, and a ratio of 74%. Dr. Zaldivar concluded that the pulmonary function studies were invalid due to poor effort and the fact that Mr. Tudor had normal resting blood gases.

In a February 24, 1989, report, Dr. Zaldivar found invalid effort during the ventilatory study which prevented further testing and the high carboxyhemoglobin of a current smoker. Though Mr. Tudor denied smoking at that time, his carboxyhemoglobin was 5.8 whereas a normal level for a nonsmoker is 2.0. Dr. Zaldivar concluded that Mr. Tudor did not suffer from occupational pneumoconiosis.

Mallinath Kayi, M.D., conducted a medical evaluation on February 28, 1989, in which he noted that Mr. Tudor was a coal miner for seventeen years. Mr. Tudor reported progressive shortness of breath since 1978. He also reported cough with blood tinged sputum. Examination of Mr. Tudor was difficult due to complaints of constant pain. Examination of the lungs revealed poor breath sounds. X-ray showed hyperaerated lung fields. FEV1 and FVC showed mild to moderate restrictive lung disease. Dr. Kayi opined that Mr. Tudor had moderate to severe and permanent pulmonary impairment. Chest x-rays taken that day showed evidence of pneumoconiosis. Mr. Tudor was awarded federal black lung benefits on July 6, 1989.

Mr. Tudor passed away on June 19, 2013. His death certificate indicates he died of respiratory failure due to chronic obstructive pulmonary disease and black lung. The Occupational Pneumoconiosis Board noted in its March 11, 2014, findings that Mr. Tudor was awarded a 5% permanent partial disability award for occupational pneumoconiosis on December 3, 1992. The Occupational Pneumoconiosis Board reviewed records, including a July 20, 1988, x-ray which was interpreted as showing insufficient pleural and parenchymal changes to establish a diagnosis of occupational pneumoconiosis. The Occupational Pneumoconiosis Board determined that occupational pneumoconiosis was not a material, contributing factor in Mr. Tudor's death. The claims administrator denied Mrs. Tudor's request for dependent's benefits on April 21, 2014.

Frank Scattaregia, M.D., reviewed Mr. Tudor's medical records and issued a March 4, 2015, report. He noted that Mr. Tudor's death certificate listed the cause of death as respiratory failure, chronic obstructive pulmonary disease, and black lung. He opined that the majority of the

x-ray readings were positive for occupational pneumoconiosis and that the pulmonary function studies demonstrated significant pulmonary impairment. Dr. Scattaregia stated that based upon his experience of being an evaluator for the U.S. Department of Labor for thirty years, Mr. Tudor suffered from occupational pneumoconiosis. He further asserted that occupational pneumoconiosis played a material, contributing role in his death.

Dr. Zaldivar stated in a June 29, 2015, record review that Mr. Tudor's description of his smoking history was not accurate. He stated that smoking is a cause of asthma and that individuals who smoke also develop chronic obstructive pulmonary disease or emphysema, usually a combination of the two. He stated that occupational pneumoconiosis could cause asthma but in this case there was no evidence of occupational asthma. CT scans showed no physical evidence of dust deposits in the lungs. Dr. Zaldivar opined that the readers of the x-rays who interpreted them as showing occupational pneumoconiosis were wrong as there is no evidence of pneumoconiosis. He concluded that Mr. Tudor had no clinical indication of occupational pneumoconiosis but did have asthma and emphysema caused by smoking. Dr. Zaldivar concluded that death was a result of multi-organ failure since the records clearly show renal failure, heart dysfunction, and pneumonia. Dr. Zaldivar opined Mr. Tudor died due to respiratory failure caused by fluid overload as well as pneumonia and would have happened regardless of the underlying lung conditions.

Dr. Scattaregia testified in a deposition on September 18, 2015, that Mr. Tudor may not have accurately described his smoking history. Mr. Tudor had a significant smoking history and Dr. Scattaregia believed he smoked approximately half a pack a day for forty years. Dr. Scattaregia admitted that he was not a B Reader and that his opinion was based on x-ray interpretations by other physicians. He stated that he based his conclusion on Mr. Tudor's work history, the death certificate, the federal black lung benefits award decision, and x-ray findings of simple pneumoconiosis. He stated that the most important factors he relied on were the death certificate and his clinical experience of treating people like Mr. Tudor. However, Dr. Scattaregia admitted that he did not know if the physician who completed the death certificate was part of Mr. Tudor's care. He also did not know that Mr. Tudor had pneumonia at the time of his death.

The Occupational Pneumoconiosis Board testified in a hearing on March 2, 2016. Jack Kinder, M.D., stated that prior to his death, Mr. Tudor was in acute respiratory failure and had pneumonia. It was clear that he died a respiratory death. He had been diagnosed with black lung, chronic obstructive pulmonary disease, and acute-on chronic diastolic congestive heart failure. Dr. Kinder explained that Mr. Tudor had respiratory compromise and infectious etiology in his lung that affected his body systems. Dr. Kinder did not believe occupational pneumoconiosis materially contributed to Mr. Tudor's death. The underlying cause of the respiratory problems, he opined, was a history of smoking half a pack of cigarettes a day for thirty to forty years. Dr. Kinder also emphasized that high resolution chest CT scans were negative for occupational pneumoconiosis. Rajesh Patel, M.D., testified on behalf of the Board that Mr. Tudor died from sepsis, respiratory failure, and pneumonia. Dr. Patel stated that looking at radiographs and CT reports, he was unable to make a diagnosis of occupational pneumoconiosis. He agreed with Dr. Kinder's testimony and conclusion that occupational pneumoconiosis did not materially

contribute to the decedent's death. Jack Willis, M.D., also testified on behalf of the Board and agreed that there was no evidence of occupational pneumoconiosis and that occupational pneumoconiosis was not a material contributing factor in Mr. Tudor's death.

The Office of Judges affirmed the claims administrator's rejection of the claim on April 11, 2016. It found that though Mr. Tudor had been awarded federal black lung benefits, there was evidence that he had a significant smoking history and Dr. Zaldivar indicated that Mr. Tudor did not accurately describe his smoking history. Dr. Zaldivar and the Occupational Pneumoconiosis Board both emphasized that Mr. Tudor's CT scans showed no evidence of occupational pneumoconiosis and that CT scans are better indicators of occupational pneumoconiosis. Dr. Zaldivar found that any asthma or emphysema Mr. Tudor had was due to cigarette smoking and unrelated to his work as a coal miner. Dr. Zaldivar and the Occupational Pneumoconiosis Board both also believed that Mr. Tudor's death was due to respiratory failure from pneumonia, fluid overload, renal failure, and cardiac disease. Neither believed that occupational pneumoconiosis materially contributed to the death.

The Office of Judges concluded that Dr. Scattaregia's report and testimony were not reliable. Dr. Scattaregia's report lacks detail and does not address the smoking history, Mr. Tudor's condition at the time of his death, or the lack of evidence of occupational pneumoconiosis on chest CT scans. During his testimony, Dr. Scattaregia admitted that he did not know Mr. Tudor had pneumonia at the time of his death. He stated that his finding of occupational pneumoconiosis was based on chest x-ray interpretations by other physicians; however, he admitted that CT scans are better indicators of occupational pneumoconiosis.

The Office of Judges ultimately concluded that Mr. Tudor had a long history of cigarette smoking and no evidence of occupational pneumoconiosis on CT scans. Though he was awarded federal black lung benefits, that opinion rested on x-ray findings and not CT scans. The Occupational Pneumoconiosis Board was not clearly wrong when it found that occupational pneumoconiosis was not a material contributing factor in Mr. Tudor's death and that he died of respiratory failure due to non-occupational conditions. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 8, 2016.

After review, we agree with the reasoning of the Office of Judges and conclusions of the Board of Review. The opinions of Dr. Zaldivar and the Occupational Pneumoconiosis Board were clearly more reliable than that of Dr. Scattaregia. Mr. Tudor died as a result of non-occupational respiratory failure. There was no evidence of occupational pneumoconiosis on CT scans.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 2, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker